**CALLAHAN & BLAINE, APLC**
Edward Susolik (Bar No. 151081)
es@callahan-law.com
David J. Darnell (Bar No. 210166)
ddarnell@callahan-law.com
Bryan C. Oberle (Bar No. 312154)
boberle@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Plaintiff SAFE HEALTH SYSTEMS, INC.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SAFE HEALTH SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHRIS CHIERCHIO a.k.a. CHRIS LUMIA, an individual; TEAM CHIP LLC, a Wyoming limited liability company; JOSEPH MACLELLAN, an individual; GREENSPOON MARDER LLP, a Florida limited liability partnership,; and DOES 1 through 10, inclusive.<br><br>Defendants. | CASE NO.  2:23-cv-543<br><br>**COMPLAINT FOR**<br><br>1. **FRAUD AND DECEIT**<br>2. **COMMON COUNT – GOODS AND MONEY HAD AND RECEIVED**<br>3. **CONVERSION**<br>4. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>5. **BREACH OF ORAL CONTRACT**<br>6. **REPLEVIN**<br>7. **RESTITUTION / UNJUST ENRICHMENT**<br>8. **ACCOUNTING**<br>9. **VIOLATION OF PENAL CODE SECTION 496**<br>10. **PROFESSIONAL MALPRACTICE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Safe Health Systems, Inc. (hereinafter, "SAFE" or "Plaintiff") hereby alleges as follows:

## INTRODUCTION

1.    This case concerns a fraudulent scheme that was committed against Plaintiff concerning its purchase of COVID-19 test kits.  Specifically, Plaintiff's purchase of these test kits, and the resulting re-sale profit it would obtain therefrom, was interrupted by Defendants CHRIS LUMIA and TEAM CHIP, LLC inserting themselves into the transaction based on fraudulent misrepresentations and concealments.  As a result, Plaintiff was induced to pay nearly $6 million for test kits it never actually received or obtained any sale proceeds from.

## JURISDICTION & PARTIES

2.    Plaintiff SAFE HEALTH SYSTEMS, INC. is a Delaware corporation with its principal place of business located in Scottsdale, Arizona.

3.    Plaintiff is informed, believes, and based thereon alleges that at all times relevant herein, Defendant CHRIS CHIERCHIO a.k.a. CHRIS LUMIA (hereinafter, "Lumia") was an individual residing in the State of New York. Defendant Lumia introduced himself to Plaintiff as "Chris Lumia," but Plaintiff is informed and believes that his real name is Chris Chierchio.  Plaintiff is also informed and believes that Lumia is an owner and/or officer of Defendant TEAM CHIP LLC.

4.    Plaintiff is informed, believes, and based thereon alleges that at all times relevant herein, Defendant TEAM CHIP, LLC (hereinafter, "Team Chip") was a Wyoming limited liability company, with its principal place of business in Richmond Hill, New York.

5.    Plaintiff is informed, believes, and based thereon alleges that at all times relevant herein, Defendant JOSEPH MACLELLAN (hereinafter, "MacLellan") was an individual residing in New York, New York.  MacLellan is an attorney licensed to practice in the State of New York (State Bar No. 4616249), and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT

is affiliated with Defendant GREENSPOON MARDER, LLP.

6.     Plaintiff is informed, believes, and based thereon alleges that at all times relevant herein, Defendant GREENSPOON MARDER, LLP (hereinafter, "Greenspoon Marder") was a Florida limited liability partnership authorized to do business in California and New York, with its principal place of business in New York City, New York.

7.     The true names and capacities of the fictitiously named Defendants DOES 1 through 10 are unknown to Plaintiff at this time, and are therefore sued herein as DOE Defendants.  Plaintiff will, with leave of the Court, amend this Complaint to set forth the true names and capacities of such fictitiously named Defendants when the same have been ascertained.  On information and belief, each of the fictitiously named Defendants is responsible in some manner for the acts, occurrences, and damages hereinafter alleged.

8.     Plaintiff is informed and believes, and based thereon alleges that each of the Defendants herein, in doing the things alleged, was acting as the agent, officer, servant, employee, or joint venturer of their Co-Defendants and such acts were within the course, scope, and purpose of their agency and/or hiring to advance a common business venture.

9.     This Court has jurisdiction over the instant litigation pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants Lumia, Team Chip, MacLellan, and Greenspoon Marder (collectively, "Defendants") are all individuals or entities belonging to different States, and because the amount in controversy exceeds $75,000.

10.     Venue is proper in the Central District of California – Western Division because the Non-Disclosure Agreement that is a subject of this litigation, and which was signed by all named Defendants, contains a clause providing that the "federal or state courts located in Los Angeles, CA will have exclusive jurisdiction and venue for any action arising under this Agreement."  Furthermore, the events giving rise to

the claims at issue herein occurred within California and the test kits that are the subject of this litigation are believed to be located within California.

## **FACTUAL ALLEGATIONS**

11.    SAFE is a company that sells COVID-19 test kits as one of its business offerings.

12.    In or around January 2022, Defendant MacLellan, an attorney associated with Defendant Greenspoon Marder, introduced SAFE to ICON International, Inc. ("ICON"), a finance company that had purchased several million packs of COVID-19 test kits ("test kits") from a company called iHealth Lab, Inc. The purpose of this introduction was, ostensibly, to facilitate the execution of an agreement between SAFE and ICON, whereby SAFE would purchase ICON's test kits so that SAFE could sell them to its customers.

13.    MacLellan copied Lumia on his email introducing ICON to SAFE, and it was believed by SAFE that Lumia had some affiliation and/or authority with ICON.  Indeed, in the introductory email, MacLellan indicated to SAFE that Lumia was from ICON.  At the time of this pleading, the true nature of Lumia's affiliation with ICON is unknown to Plaintiff.  However, Lumia was substantially involved with and an active participant in the negotiation and execution of the purchase order between SAFE and ICON, which provided further support for Plaintiff's belief, at the time, that Lumia had some affiliation and/or authority with ICON.

14.    In or around February 2022, SAFE purchased a total of 1,013,040 iHealth test kits from ICON for $5,926,284 (the "Purchase Order").  Thereafter, Lumia persuaded Mike Troska, a representative of SAFE, to have the test kits shipped to warehouses located in California so that Lumia could take custody of them and sell them on SAFE's behalf.  In this regard, Lumia represented that the test kits would be in the care of Team Chip, which is an entity that is owned and/or controlled by Lumia.  Team Chip and Lumia shall be collectively referred to as the "Lumia Defendants."

15.    Significantly, it was agreed and understood by SAFE, ICON, and Defendants that the test kits had a shelf life of approximately 12 months. Once a test kit passes its expiration date, it becomes essentially worthless. Accordingly, time was of the essence in that once the test kits were delivered, they had to be re-sold relatively quickly. Because of this, Lumia represented to SAFE on several occasions that he would swap out some of the older test kits with newer units from ICON's warehouse in Las Vegas. These representations provided further support for Plaintiff's belief, at the time, that Lumia had some affiliation and/or authority with ICON. At the time of this pleading, Plaintiff does not know if any of the older test kits were actually swapped out as represented by Lumia.

16.    Prior to entering into the Purchase Order, a Non-Disclosure Agreement ("NDA") was executed between and among SAFE, Greenspoon Marder, ICON, and Team Chip on January 26, 2022. Pursuant to this NDA, the parties were prohibited from using or disclosing any confidential information obtained in the course of the Purchase Order transaction to any person or for any purpose outside of the Purchase Order itself. A true and correct copy of the NDA is attached to this Complaint as Exhibit 1.[1]

17.    Between March and April 2022, the test kits that SAFE purchased were being moved from ICON's Las Vegas warehouse to a warehouse in the City of Industry, California ("City of Industry warehouse"), which is where they would be in the constructive care and possession of the Lumia Defendants. During this time, SAFE repeatedly attempted to obtain possession of at least some of the tests so that they could sell them to customers they had ready and waiting. However, whenever

_____

[1] The signature blocks for ICON and Team Chip (Parties C and D respectively) reference the entities JCC Consultants Group LLC and Thomas Russo Inc. However, the signature blocks correctly list the business addresses for ICON and Team Chip, and are signed by Greg Caglione and Chris Lumia on behalf of those entities. It was understood and intended by the parties that ICON and Team Chip were parties to the NDA.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SAFE asked the Lumia Defendants about the units, where they were, and how to get them, the Lumia Defendants repeatedly stated that they were "working on it" and were attempting to find a buyer. In the end, SAFE never obtained personal possession of any of the test kits it purchased.

18.    By April 19, 2022, all of the over one million test kits ordered by SAFE had been delivered to the City of Industry warehouse into the constructive care and possession of the Lumia Defendants. On April 28, 2022, these test kits were transferred from the City of Industry warehouse to a warehouse in Riverside, California (the "Riverside warehouse").

19.    Plaintiff is informed and believes that the most (and perhaps all) of the test kits at the Riverside warehouse were sold or otherwise moved by the Lumia Defendants in May, June and July of 2022. However, the Lumia Defendants gave SAFE no documents or notice concerning the sale of these test kits, and have not transferred any proceeds from such sales to SAFE.

20.    In or around July 2022, Ken Mayer, the CEO of SAFE, had a phone conversation with Lumia regarding payment for the test kits that Lumia had taken custody of. During this conversation, Lumia represented that he still possessed the original test kits purchased by SAFE. SAFE emphasized to Lumia during this conversation that time was of the essence to sell these test kits given their rapidly-approaching expiration dates. In response, Lumia again stated that he could simply swap out the test kits with newer ones with later expiration dates. At the time of this pleading, Plaintiff does not know if any of the older test kits were actually swapped out as represented by Lumia.

21.    In or around October 2022, Randy Harding, the Director of Supply Chain and Logistics for SAFE, had further conversations with Lumia inquiring as to the status of the test kits that SAFE had purchased. During this conversation, Lumia again stated that he still possessed SAFE's test kits. However, by this point, even if they were still in Lumia's possession, the original test kits (unless they were

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  swapped out for newer ones with later expiration dates) would have been at or near

2  their expiration dates.

3      22.    To date, SAFE has not received any money whatsoever from

4  Defendants related to their acquisition and sale of the test kits that SAFE purchased

5  for nearly $6 million.  It is unknown to SAFE at this time exactly how many of the

6  test kits the Defendants converted and sold in secret, nor does SAFE know exactly

7  when they were sold or how much they were sold for.  However, SAFE is informed

8  and believes that but for the acts and omissions of the Lumia Defendants as

9  described herein, SAFE could have sold the test kits for at least $5,926,284.

## FIRST CLAIM

## FRAUD AND DECEIT

### (Against Defendants CHRIS CHIERCHIO a.k.a. CHRIS LUMIA,

### TEAM CHIP LLC, and DOES 1 - 5, inclusive)

14      23.    Plaintiff repeats and re-alleges each of the allegations contained

15  hereinabove as though set forth in full herein.

16      24.    Plaintiff is informed and believes, and based thereon allege that, the

17  Lumia Defendants have made numerous intentional misrepresentations and

18  concealed facts from Plaintiff as outlined above.  These misrepresentations and

19  concealments include, without limitation:

20          a.    The concealment and/or misrepresentation of the nature of the

21  Lumia Defendants' relationship with ICON;

22          b.    The false representation that Defendants intended to sell on

23  SAFE's behalf the test kits that SAFE purchased from ICON;

24          c.    The false representation during and after the negotiations of the

25  Purchase Order and NDA that Defendants intended to provide SAFE with the

26  proceeds of the sale of the test kits that SAFE purchased from ICON;

27          d.    The false representations that Defendants intended to transfer

28  any of the test kits to SAFE so that SAFE could sell such test kits itself;

e.    The false representations that Defendants intended to or were able to replace older test kits with newer test kits with further expiration dates;

f.    The concealment of the fact that Defendants had attempted to and/or had actually sold the test kits purchased by SAFE;

g.    The false representations in or around July and October 2022 that Defendants had not yet sold the test kits purchased by SAFE.

25.    Plaintiff is informed and believes, and based thereon alleges that, the above representations by Defendants were false when made.  Plaintiff is further informed and believes, and based thereon alleges that, Defendants did not have any intention to provide any proceeds of the sale of the test kits to SAFE, or to replace any of SAFE's expiring test kits, at any time.

26.    While participating in the negotiations between SAFE and ICON related to the Purchase Order and NDA, the Lumia Defendants fraudulently concealed the nature of their relationship with ICON from Plaintiff, even while taking custody of the test kits that SAFE purchased from ICON and ostensibly selling them on SAFE's behalf.  Defendants further concealed from SAFE the fact that they were selling SAFE's test kits, in an effort to avoid paying SAFE any proceeds from such sale.

27.    The Lumia Defendants owed a duty to Plaintiff to disclose these facts because of their relationship with and transactions with Plaintiff.  Further, Defendants made representations to Plaintiff but failed to disclose facts that materially qualified their representations, or which rendered their disclosures likely to mislead, and which statements actively concealed discovery of their falsity by Plaintiff.

28.    Plaintiff is informed and believes, and based thereon alleges that, these misrepresentations and omissions were intended to and did cause harm to Plaintiff. As a result of the Lumia Defendants' misrepresentations and concealments, Defendants took for themselves the sales proceeds that should have been obtained

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

by SAFE regarding the test kits.

29.     The misrepresentations alleged hereinabove were material.  But for the misrepresentations and omissions made by the Lumia Defendants, SAFE would have acted differently regarding the above transactions.  For example, SAFE would have sold the test kits itself and been able to obtain the proceeds of such sales.  Plaintiff is further informed and believes that Defendants' deceptive involvement in negotiating the pricing of the Purchase Order also resulted in Plaintiff paying more for the test kits purchased from ICON than they would have paid had Defendants not been involved.

30.     Plaintiff is informed and believes, and based thereon alleges that, the statements and omissions alleged herein were intended to induce and did induce reasonable reliance by Plaintiff. Plaintiff's reliance on Defendants' misrepresentations and omissions was a substantial factor in causing Plaintiff's harm.

31.     As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has been damaged in a sum according to proof at trial in excess of the jurisdictional minimum amount of the Court.

32.     The misconduct described herein by Defendants was engaged in willfully, recklessly, and with conscious disregard of Plaintiff's rights, warranting the imposition of punitive damages against Defendants.

## SECOND CLAIM

## COMMON COUNT – GOODS AND MONEY HAD AND RECEIVED

### (Against Defendants CHRIS CHIERCHIO a.k.a. CHRIS LUMIA, TEAM CHIP LLC, and DOES 1 - 5, inclusive)

33.     Plaintiff repeats and re-alleges each of the allegations contained hereinabove as though set forth in full herein.

34.     As alleged above, the Lumia Defendants persuaded SAFE that custody of the test kits being purchased by SAFE should be transferred to them so that they

COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

could diligently sell such test kits on SAFE's behalf and transmit the proceeds of such sales to SAFE.

35.    SAFE transferred custody of the test kits to the Lumia Defendants as requested, in reliance upon Defendants' promise to exercise diligence in selling the test kits before their expiration and to transfer the proceeds of such sales to SAFE.

36.    Plaintiff is informed and believes that, rather than act diligently in selling the test kits and transferring the proceeds to SAFE, the Lumia Defendants instead abandoned the test kits and permitted them to expire and/or sold the test kits and kept all proceeds of such sales for themselves without transferring any of the sales proceeds to SAFE.  Defendants also withheld such test kits from SAFE even when SAFE specifically asked for them.  As such, SAFE has received nothing in exchange for the $5,926,284 it paid to ICON for the test kits.

37.    The reasonable value of the test kits taken by the Lumia Defendants will be proven at trial, but is at the very least $5,926,284, together with interest thereon at the maximum rate permitted by law.  Accordingly, Plaintiff is entitled to the reasonable value of the goods provided to the Lumia Defendants for which SAFE has received no sales proceeds.

### THIRD CLAIM

### CONVERSION

**(Against Defendants CHRIS CHIERCHIO a.k.a. CHRIS LUMIA,**

**TEAM CHIP LLC, and DOES 1 - 5, inclusive)**

38.    Plaintiff repeats and re-alleges each of the allegations contained hereinabove as though set forth in full herein.

39.    Plaintiff owned, possessed, and/or had a right to possess a total of 1,013,040 test kits they purchased from ICON for $5,926,284.

40.    The Lumia Defendants substantially interfered with Plaintiff's property by knowingly or intentionally taking possession of, abandoning, selling, and/or refusing to return Plaintiff's property in violation of the parties' agreement that

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Defendants would diligently sell such test kits on SAFE's behalf and transmit the proceeds of such sales to SAFE.

41.    Plaintiff is informed and believes, and based thereon alleges, that Defendants also knowingly or intentionally took proceeds of the sale of SAFE's test kits, which Defendants had no right to take, and have refused to return said funds after Plaintiff demanded return of the same.

42.    Plaintiff did not consent to the Lumia Defendants' taking and/or abandonment of its property and funds.  To the extent any consent was provided as to the Lumia Defendants' possession of the property, such possession was fraudulently obtained by Defendants.

43.    As a direct, proximate and foreseeable result of Defendants' actions alleged herein, Plaintiff has been damaged in an amount to be proven at trial in excess of the jurisdictional minimum amount of the Court.

44.    The misconduct described herein by Defendants was engaged in willfully, recklessly, and with conscious disregard of Plaintiff's rights, warranting the imposition of punitive damages against Defendants.

## **FOURTH CLAIM**

### **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against Defendants CHRIS CHIERCHIO a.k.a. CHRIS LUMIA, TEAM CHIP LLC, and DOES 1 - 5, inclusive)**

45.    Plaintiff repeats and re-alleges each of the allegations contained hereinabove as though set forth in full herein.

46.    In or around February 2022, SAFE and ICON entered into a Purchase Order agreement for the sale of 1,013,040 iHealth test kits, which would have resulted in economic benefit to SAFE in the form of sales proceeds from the re-sale of such test kits by SAFE to its customers.

47.    The nature of the Lumia Defendants' relationship with ICON is unknown to Plaintiff at the time of this pleading, but to the extent the Lumia Defendants were third parties to this transaction they knew of the contractual relationship between Plaintiff and ICON and of the economic relationship between SAFE and its customers, and intended to disrupt these relationships, thereby depriving Plaintiff of the economic benefits thereto.

48.    The Lumia Defendants engaged in wrongful conduct by engaging in the conduct outlined hereinabove, including but not necessarily limited to: fraudulently holding themselves out to be representatives of ICON during negotiations of the Purchase Order and NDA; fraudulently misrepresenting their intention to sell the test kits on SAFE's behalf and transfer proceeds of such sale to SAFE; withholding possession of the test kits even when requested by SAFE; withholding the proceeds of the sales of the test kits from SAFE; and/or abandoning the test kits by permitting them to expire and become worthless.

49.    As a direct and proximate result of the Lumia Defendants' conduct, SAFE's economic relationships with ICON and with its customers who would have purchased the test kits from SAFE were disrupted, and SAFE has been deprived of the economic benefits of such relationships.  Plaintiff has thus been damaged in an amount to be proven at trial in excess of the jurisdictional minimum amount of the Court.

50.    The misconduct described herein by Defendants was engaged in willfully, recklessly, and with conscious disregard of Plaintiff's rights, warranting the imposition of punitive damages against Defendants.

## FIFTH CLAIM

### BREACH OF ORAL CONTRACT

### (Against Defendants CHRIS CHIERCHIO a.k.a. CHRIS LUMIA, TEAM CHIP LLC, and DOES 1 - 5, inclusive)

51.    Plaintiff repeats and re-alleges each of the allegations contained

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    hereinabove as though set forth in full herein.

2        52.    In or around February 2022, the Lumia Defendants entered into an oral

3    contract with SAFE, whereby the Lumia Defendants agreed that they would custody

4    of and sell the test kits that SAFE purchased from ICON on SAFE's behalf.

5        53.    Pursuant to their oral contract with SAFE, the Lumia Defendants were

6    also obligated to exercise diligence in selling the test kits before their expiration and

7    to transfer the proceeds of such sales to SAFE.

8        54.    Plaintiff performed all duties required of it under this oral contract with

9    Defendants except those obligations Plaintiff was prevented or excused from

10   performing.

11       55.    Plaintiff is informed and believes that, in violation of their duties under

12   the oral contract, the Lumia Defendants abandoned the test kits and permitted them

13   to expire and/or sold the test kits and kept all proceeds of such sales for themselves

14   without transferring any of the sales proceeds to SAFE.

15       56.    As a direct and proximate result of Defendants' breaches of their oral

16   contract with SAFE, Plaintiff has been damaged in a sum according to proof at trial

17   in excess of the jurisdictional minimum amount of the Court.

18                                **SIXTH CLAIM**

19                                 **REPLEVIN**

20       **(Against Defendants CHRIS CHIERCHIO a.k.a. CHRIS LUMIA,**

21          **TEAM CHIP LLC, and DOES 1 - 5, inclusive)**

22       57.    Plaintiff repeats and re-alleges each of the allegations contained

23   hereinabove as though set forth in full herein.

24       58.    Pursuant to applicable Federal and State law, including but not limited

25   to Federal Rules of Civil Procedure Rule 64 and California Code of Civil Procedure

26   Section 667, Plaintiff demands the return of its rightful property and the damage it

27   has, or will, sustain due to the Lumia Defendants' unlawful conversion of Plaintiff's

28   test kits.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

59.     Section 667 provides, in pertinent part, "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention." Cal. Civ. Proc. Code § 667.

60.     Despite Plaintiff's repeated requests that the Lumia Defendants return the test kits that they have in their custody, the Lumia Defendants have refused to return them.  Further, the Lumia Defendants promised to provide Plaintiff with newer test kits than the ones originally purchased, but it is unknown at this time if this was ever performed.  As a result, Plaintiff has suffered damages as described herein.

## SEVENTH CLAIM

### RESTITUTION / UNJUST ENRICHMENT

### (Against Defendants CHRIS CHIERCHIO a.k.a. CHRIS LUMIA, TEAM CHIP LLC, and DOES 1 - 5, inclusive)

61.     Plaintiff repeats and re-alleges each of the allegations contained hereinabove as though set forth in full herein.

62.     Based on their acts and omissions as alleged above, the Lumia Defendants were unjustly enriched because such wrongful acts caused them to receive benefits that they otherwise would not have achieved, to the detriment of Plaintiff.

63.     Accordingly, the Lumia Defendants are compelled to surrender the benefits that they have wrongfully received, and therefore to make restitution to Plaintiff.

64.     The amount of unjust benefit shall be proven at trial.

COMPLAINT

**EIGHTH CLAIM**

**ACCOUNTING**

**(Against Defendants CHRIS CHIERCHIO a.k.a. CHRIS LUMIA,**

**TEAM CHIP LLC, and DOES 1 - 5, inclusive)**

65.    Plaintiff repeats and re-alleges each of the allegations contained hereinabove as though set forth in full herein.

66.    As a result of the Lumia Defendants' misconduct as alleged herein, Defendants have wrongfully obtained monies that rightfully belong to SAFE. Specifically, Plaintiff is informed and believes that the Lumia Defendants have obtained proceeds from the sale of the test kits purchased by SAFE yet have not transferred any of such proceeds to SAFE.

67.    Plaintiff is entitled to receive from the Lumia Defendants a full and complete accounting of all monies that by right should have gone to Plaintiff had Defendants acted in accordance with their contractual and ethical duties to Plaintiff.

68.    Plaintiff is informed and believes, and based thereon alleges, that Plaintiff cannot ascertain what is rightfully owed to it without an accounting.

**NINTH CLAIM**

**VIOLATION OF PENAL CODE § 496**

**(Against Defendant CHRIS CHIERCHIO a.k.a. CHRIS LUMIA,**

**and DOES 1 - 5, inclusive)**

69.    Plaintiff repeats and re-alleges each of the allegations contained hereinabove as though set forth in full herein.

70.    As set forth in Penal Code § 496(a), "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment ...."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT

71.    As alleged above, Lumia received Plaintiff's property, including, but not limited to, the test kits that Plaintiff purchased, which had been stolen from Plaintiff or had been obtained from Plaintiff in a manner that constitutes theft.

72.    On information and belief, Lumia knew that the property he received was stolen or obtained in a manner that constitutes theft.

73.    As a direct, proximate and foreseeable result of Lumia's actions alleged herein, Plaintiff has been damaged in an amount to be proven at trial in excess of the jurisdictional minimum amount of the Court.

74.    Pursuant to Penal Code § 496(c), Plaintiff is entitled to treble damages, costs of suit, and reasonable attorney's fees.

## TENTH CLAIM

### PROFESSIONAL MALPRACTICE

### (Against Defendants JOSEPH MACLELLAN, GREENSPOON MARDER LLP, and DOES 6 - 10, inclusive)

75.    Plaintiff repeats and re-alleges each of the allegations contained hereinabove as though set forth in full herein.

76.    In or around January 2022, Defendants MacLellan and Greenspoon Marder (collectively, the "Attorney Defendants") were retained by SAFE to serve as its legal representative with respect to negotiating, facilitating, and executing the Purchase Order and NDA.  This attorney-client relationship persisted at all times herein mentioned.

77.    The Attorney Defendants owed fiduciary duties to SAFE by virtue of their status as SAFE's legal representative.  Accordingly, the Attorney Defendants owed to SAFE duties including, but not limited to: (i) the duty of care to use such skill, produce, and diligence as expected from a member of the legal profession; (ii) the duty of loyalty to SAFE in all aspects of their legal representation; and (iii) the duty to be honest and truthful with SAFE and to not deceive or mislead it.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

78.    The Attorney Defendants breached their duties to SAFE by engaging in the conduct described herein, including but not limited to:

a.    Introducing SAFE to Lumia and implying that he was qualified to sell and take custody of the test kits, and would in fact fulfill his promise to sell the test kits for SAFE;

b.    Representing to SAFE that Lumia was affiliated with ICON;

c.    Including Lumia in emails concerning the negotiation of the Purchase Order and NDA;

d.    Permitting Lumia to participate in negotiations concerning the Purchase Order and NDA;

e.    Permitting Lumia to take custody of the test kits SAFE was purchasing;

f.    Representing SAFE with respect to negotiating the Purchase Order and NDA despite the fact that significant risk existed that their representation of SAFE would be materially limited by their own personal interests;

g.    Putting their own interests and/or the interests of Lumia ahead of those of Plaintiff.

79.    As a direct and proximate result of the Attorney Defendants' breaches of his fiduciary duties, Plaintiff has been damaged in a sum according to proof at trial in excess of the jurisdictional minimum amount of the Court. Such damages were reasonably foreseeable by the Attorney Defendants when they engaged in their conduct alleged herein.

80.    The misconduct described herein by the Attorney Defendants was engaged in willfully, recklessly, and with conscious disregard of Plaintiff's rights, warranting the imposition of punitive damages against the Attorney Defendants.

## **PRAYER FOR DAMAGES**

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

1.    For damages in an amount to be determined at trial, but believed to be at least $5,926,284;

2.    For an accounting of all funds received;

3.    For a constructive trust on all funds from third parties that were wrongfully obtained and received by the Lumia Defendants for the test kits;

4.    For replevin of the test kits that were taken from Plaintiff;

5.    For treble damages, costs of suit, and reasonable attorney fees pursuant to Penal Code Section 496(c);

6.    For punitive damages in an amount to be determined at trial;

7.    For prejudgment interest;

8.    For costs of suit; and

9.    For such other and further relief as the Court deems proper.


Dated: January 24, 2023          **CALLAHAN & BLAINE, APLC**

By: _____
Edward Susolik
David J. Darnell
Bryan C. Oberle
Attorneys for Plaintiff SAFE HEALTH
SYSTEMS, INC.

COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# DEMAND FOR JURY TRIAL

Plaintiff SAFE HEALTH SYSTEMS, INC. demands a jury trial on each and all of the claims set forth in this Complaint.

Dated: January 24, 2023

**CALLAHAN & BLAINE, APLC**

By: _____

Edward Susolik
David J. Darnell
Bryan C. Oberle
Attorneys for Plaintiff SAFE HEALTH SYSTEMS, INC.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# EXHIBIT 1



# Mutual Non-Disclosure Agreement

**THIS MUTUAL NON-DISCLOSURE AGREEMENT** ("**Agreement**") is made as of the date set forth on the Signature Page of the Agreement ("**Effective Date**"), by and between Safe Health Systems, a Delaware corporation with an office address at 5455 Wilshire Blvd, 12th floor, Los Angeles, CA 90036 ("**Party A**") and the company/individual(s) set forth on the Signature Page of this Agreement ("**Party B**"), Party A and Party B individually are referred to as a "**Party**," and collectively as the "**Parties**."

The Parties acknowledge and agree that each Party intends to disclose (**"Disclosing Party"**) information to the other Party (**"Receiving Party"**) related to a potential business relationship. The Receiving Party acknowledges that any information received or that is developed and related to potential work is deemed confidential and proprietary as defined below, and is generally not known to the Receiving Party, third parties, or the public.

**NOW, THEREFORE**, in consideration of the mutual promises contained in this Agreement, each of the Parties agrees as follows:

## 1. DEFINITION OF CONFIDENTIAL INFORMATION.

As used in this Agreement, "**Confidential Information**" means, including, without limitation, whether written, oral or visual, any and all: (a) Disclosing Party proprietary or non-public information; (b) information concerning trade secrets; (c) software source or object code, technical, operational, or procedural documentation, technology, ideas, formulae, know-how, procedures, algorithms and trade secrets embodied in the source code or object code, solution methodology, and other deliverables; (d) information relating to Disclosing Party's business or other affairs; (e) financial, technical, operational and commercial information; (f) information regarding Disclosing Party's customers, potential customers, business plans, designs, or strategies, product and pricing lists, or staffing or human resources information; (g) information related to the transaction contemplated by this Agreement and the existence of this Agreement or any other agreements which may be entered into between the Parties; (h) information obtained by examination or review of information, books or records; (i) information obtained by examination, testing or analysis of any hardware, software or any component part of hardware or software; (j) notes, analyses, compilations, studies or other documents prepared by either Party or a Party's representatives based on, containing or otherwise reflecting its Confidential Information; and (k) any other information provided by the Disclosing Party, where the context or nature of the disclosure is reasonably construed as being confidential.

The term Confidential Information does not include information that: (a) is or becomes generally available to the public by means other than as a result of: (i) disclosure of Confidential Information by the Receiving Party or any other person who directly or indirectly receives Confidential Information from the Receiving Party, or (ii) a violation of a confidentiality obligation to the Disclosing Party; (b) is or becomes available to the Receiving Party on a non-confidential basis from a source which is entitled to disclose it to the Receiving Party; (c) was demonstrably known to the Receiving Party prior to disclosure by the Disclosing Party; or (d) is verifiably developed by the Receiving Party without the benefit of the Confidential Information provided by the Disclosing Party.

DocuSign Envelope ID: 9D237F9-275B-4BD4-8911-8B386093B8DD

**2. TREATMENT OF CONFIDENTIAL INFORMATION**.  The Receiving Party must: (a) at all times maintain the confidentiality of the Confidential Information and provide at least the minimum level of protection that is applied to the Receiving Party's own confidential information or proprietary property, but in no event, less than a commercially reasonable standard of care; (b) use the Confidential Information only in connection with a potential business relationship between the parties; (c) restrict disclosure of the Confidential Information to only those individuals, including, without limitation, employees, subcontractors, and employees of subcontractors, affiliates and subsidiaries, who need to know (the "NTK Persons") in connection with the evaluation of a potential business relationship between the parties  and ensure that all NTK Persons are either bound by this Agreement by operation of law or have entered into a confidentiality agreement which provides identical or superior protection to both Parties as that afforded in this Agreement; and (d) copy the Confidential Information only as necessary for evaluation of a potential business relationship between the parties, and ensure that the copying process is confidential. Receiving Party will notify the Disclosing Party promptly upon the discovery of any: (a) loss; (b) unauthorized disclosure; or (c) unauthorized use (a "Loss Event") of the Confidential Information and will cooperate at its own expense to remedy the effects of any such Loss Event.

**3. NO LICENSE**. The Disclosing Party is not granting the Receiving Party a license to use any of its patents, copyrights, trademarks, trade secrets, or other proprietary rights contained in the Confidential Information under the terms of this Agreement. The Receiving Party's sole purpose for use of the Confidential Information is to evaluate the Registry Services Project in accordance with the terms of this Agreement.

**4. DISCLOSURE IN LEGAL PROCEEDING**. If the Receiving Party is required by law or by interrogatories, written requests for information or documents by a governmental authority or agency, subpoena, court order, civil investigative demand or similar legal process to disclose any Confidential Information, then the Receiving Party will provide (unless prohibited by applicable law) the Disclosing Party with prompt, prior written notice of the request so that the Disclosing Party may seek, at its sole expense, an appropriate protective order or the continued confidential treatment of the requested information or documents.  In the absence of such protective order, the Receiving Party may disclose such Confidential Information that, in the sole of opinion of Receiving Party's legal counsel, is required to be disclosed.

**5. SURVIVAL OF OBLIGATION TO PROTECT CONFIDENTIAL INFORMATION**.
The obligation to protect the confidentiality of the Confidential Information will survive the termination of the Agreement for a period of 5 years from the date of termination of this Agreement. Notwithstanding the foregoing, the parties understand and agree that all terms and conditions of this Agreement that may require continued performance, compliance, or effect beyond the termination of this Agreement will survive termination of this Agreement and will be enforceable by the parties.

**6. DESTRUCTION/RETURN OF CONFIDENTIAL INFORMATION**. Upon receipt of a written request by the Disclosing Party and except as required by law, rule or regulation or as necessary to comply with standard computer back-up procedures, the Receiving Party must either: (a) return the Confidential Information to the Disclosing Party, or (b) certify in writing to the Disclosing Party that the Confidential Information has been destroyed in such a manner that it cannot be retrieved.

2

DocuSign Envelope ID: 9D2337F9-375B-4BD4-8911-8B386093980DD

**7. NO WAIVER**. No failure or delay by either Party in exercising any right under this Agreement is a waiver of its rights, nor does any single or partial waiver of its rights preclude any other or further exercise of its rights or the exercise of any other right under this Agreement.

**8. INJUNCTIVE RELIEF**. The Receiving Party agrees that in the event of a breach or imminent breach of this Agreement, the Disclosing Party will be irreparably and immediately harmed and cannot be made whole by monetary damages alone. Accordingly, the Disclosing Party, in addition to any other legal remedy, will be entitled to equitable relief, including temporary and permanent injunctive relief and specific performance without the requirement of having to post a bond or other security. If the Disclosing Party prevails on its claim for such action, it will be entitled to recover its attorney's fees, costs, and expenses. The Disclosing Party will also be entitled to recover any pecuniary gain realized by Receiving Party from the unauthorized use or disclosure of Confidential Information.

**9. ENTIRE AGREEMENT; SEVERABILITY**. This Agreement constitutes the entire agreement and understanding between the Parties with respect to the Confidential Information and supersedes all prior and contemporaneous negotiations, discussions and understandings of the parties, whether written or oral. If any provision of this Agreement is held invalid or unenforceable by a court, that provision will be revised by the Parties to achieve legal compliance, or deleted from this Agreement and the remaining provisions of this Agreement will continue in full force and effect.

**10. GOVERNING LAW**. This Agreement is governed by the laws of the State of California, without regard to any conflicts of laws principles. The federal or state courts located in Los Angeles, CA will have exclusive jurisdiction and venue for any action arising under this Agreement.

**11. NO ASSIGNMENT**. The Receiving Party's rights under this Agreement cannot be assigned without the prior written consent of the Disclosing Party. Any attempt to assign the Receiving Party's rights under this Agreement without the Disclosing Party's written consent is void.

**IN WITNESS WHEREOF**, the Parties have respectively caused this Agreement to be executed by their authorized representatives as of the Effective Date.

*[Signature Page Follows]*

3

**SAFE HEALTH SYSTEMS, INC.**

By: _Ken Mayer_

Name: Ken Mayer

Title: Director

Date: 1/26/2022

**PARTY C:**

Company: JCC Consultants Group LLC

Address: One East Weaver Street
Greenwich, CT 06831

By: _Greg Caglione_

Name: Greg Caglione

Title: EVP-(SPS)- in store solutions

Date: 1/26/2022

**PARTY B:**

Company: Greenspoon Marder, LLP

Address: 590 Madison Ave
New York, NY 10022

By: _____

Name: Joseph MacLellan

Title: Esquire

Date: 1/26/2022

**PARTY D:**

Company: Thomas russo inc

Address: 135-24 hillside
Hillside ave
Richmond hill
Ny 11418

By: _____

Name: Chris Lumina

Title: President

Date: 1/26/2022

*[Signature Page to Safe Mutual NDA]*

4