JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFE HEALTH SYSTEMS, INC., a Delaware corporation,<br><br>                              Plaintiff,<br><br>             v.<br><br>CHRIS CHIERCHIO a.k.a CHRIS LUMIA, an individual; TEAM CHIP LLC, a Wyoming limited liability company; JOSEPH MACLELLAN, an individual; GREENSPOON MARDER LLP, a Florida limited liability partnership,; and DOES 1 through 10, inclusive.<br><br>                              Defendants. | Case No. 2:23-cv-00543-SPG-PDx<br><br>**ORDER GRANTING IN PART PLAINTIFF'S RENEWED RULE 55(b) MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS CHRIS CHIERCHIO a.k.a. CHRIS LUMIA AND TEAM CHIP LLC [ECF No. 47]** |

Before the Court is Safe Health Systems, Inc.'s ("Plaintiff") renewed motion for default judgment pursuant to Federal Rule of Civil Procedure 55 ("Motion") against Defendants Chris Chierchio, a.k.a. Chris Lumia, and Team Chip LLC.  (ECF No. 47). Having considered Plaintiff's submissions,[1] the relevant law, Plaintiff's oral arguments

---

[1] Defendants Chris Chierchio and Team Chip have not filed a response to Plaintiff's Motion.

during the hearing on October 18, 2023, and the record in this case, the Court GRANTS IN PART the Motion.

## I.    BACKGROUND

### A.    Factual Background

The Complaint alleges as follows: Plaintiff's case arises out of Plaintiff's purchase of 1,013,040 iHealth test kits from the company ICON International, Inc. ("ICON") for $5,926,284.  (ECF No. 1 ("Compl.") ¶ 14) (Declaration of Ken Mayer ("Mayer Decl."), ¶ 3).  Plaintiff alleges that Plaintiff was defrauded from receiving the benefits of the transaction due to a scheme perpetrated by Defendants Chris Chierchio, a.k.a. Chris Lumia, and Team Chip. (Compl. ¶ 38-40).

On January 25, 2022, Plaintiff was introduced to Lumia and Team Chip by Joseph MacLellan and Greenspoon Marder LLP.  (Mayer Decl. ¶ 4, Exh. 1).  ("I'm [Joseph MacLellan] going to connect you both with Chris and Greg from Icon International who's selling their 5M ihealth allocation.").  The purpose of this introduction was to facilitate the execution of an agreement between Plaintiff and ICON whereby Plaintiff would purchase ICON's test kits so that Plaintiff could sell them to its customers. (Compl. ¶ 12). According to the Complaint, around February 2022, Plaintiff purchased a total of 1,013,040 iHealth test kits from ICON for $5,926,284. (Compl. ¶ 14).

As alleged in the Complaint, Plaintiff believed that Defendants were representatives of ICON, based on representations by Defendants, Joseph MacLellan, and Greenspoon Marder LLP.  (Compl. ¶ 13).  Because of this, Plaintiff permitted Defendants to obtain custody of the test kits it had purchased with the understanding that Defendants would sell these test kits on Plaintiff's behalf and transmit any proceeds to Plaintiff.  (Mayer Decl. ¶ 5).  According to Plaintiff, this arrangement made sense because Plaintiff and Defendants agreed that the test kits had a shelf life of approximately 12 months, and that Defendants could swap out some of the older test kits with newer units from ICON's warehouse in Las Vegas.  (Compl. ¶ 15).  According to Plaintiff, because he thought that Defendants were

representatives from ICON International, Plaintiff believed he had little reason to worry about the ill-intentions or plans of Defendants.

Between March and April 2022, Plaintiff's purchased test kits were moved from ICON's Las Vegas warehouse to a warehouse in the City of Industry, California.  While at this warehouse, Plaintiff alleges the test kits were in the constructive care and possession of Defendants. *Id.* ¶ at 17.  During this time, Plaintiff repeatedly attempted to obtain possession of at least some of the test kits so that he could sell them to customers he had ready and waiting. *Id.*  However, whenever Plaintiff asked Defendants about the units, where they were, and how to get them, Defendants stated that they were "working on it" and were attempting to find a buyer. *Id.*  To date, Plaintiff has never obtained personal possession of any of the test kits purchased.  According to Plaintiff, these test kits appear to have been unilaterally sold by Defendants without notice to Plaintiff and without any proceeds of such sales being transmitted to Plaintiff.  (Compl. ¶ 19); (ECF No. 47 at 10).  However, even if the test kits have not been sold, the test kits (unless they were swapped out for newer ones with later expiration dates), would be near or have passed their expiration dates, rendering them worthless.  (Compl. ¶ 21).

### B.    Procedural History

On January 24, 2023, Plaintiff filed the operative Complaint. (ECF No. 1).  Plaintiff's Complaint alleges ten causes of action: (1) Fraud and Deceit, (2) Common Count – Goods and Money Had and Received, (3) Conversion, (4) Intentional Interference with Prospective Economic Advantage, (5) Breach of Oral Contract, (6) Replevin, (7) Restitution/Unjust Enrichment, (8) Accounting, and (9) Violation of Penal Code Section 496.[2]

---

[2] Plaintiff's Complaint originally contained a tenth cause of action for Professional Malpractice.  On June 12, 2023, the Court issued an order granting Defendant Greenspoon Marder LLP's and Joseph MacClellan's Motion to Sever and Transfer the Tenth Cause of Action to the Southern District of New York.  *See* ECF No. 41.

Defendant Team Chip was personally served with Plaintiff's Complaint on February 6, 2023, via its registered agent for service of process. (ECF No. 11 at 1). Defendant Chris Cherchio, a.k.a Chris Lumia, was served via substitute service on March 13, 2023, by delivering true and correct copies of the Summons, Complaint, and accompanying initial documents to his wife, Lisa Chierchio, at his dwelling. (ECF No. 20 at 2). Defendants have not filed an answer, response, or any other appearance in this action. (Oberle Decl. ¶ 6).

On April 18, 2023, Plaintiff filed a request that the clerk enter default against Chris Chierchio and Team Chip, which was entered by the Clerk pursuant to Federal Rule of Civil Procedure 55(a) on April 19, 2023, and April 17, 2023, respectively. (ECF Nos. 32, 28). On May 17, 2023, Plaintiff then moved for Default Judgment against Defendants Chris Chierchio, a.k.a Chris Lumia, and Team Chip LLC. (ECF No. 36). This Court on August 31, 2023, denied without prejudice Plaintiff's motion for default judgment. (ECF No. 46). Plaintiff timely renewed its Default Judgment on September 29, 2023. (ECF No. 47).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) permits the Court to order default judgment following the entry of default by the Clerk of Court. Fed. R. Civ. P. 55(b). After the Clerk enters default, well-pleaded allegations in the complaint are generally accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Allegations as to damages, however, must be proven. *Id.* To determine damages, a court may rely on declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Additionally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Before a court can enter a default judgment against a defendant, the plaintiff must comply with the procedural requirements set forth in Federal Rules 54(c) and 55, as well as those in Local Rule 55-1. Local Rule 55-1 requires the party moving for default judgment to submit a declaration establishing: (1) when and against which party default

was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the defaulting party was properly served with notice, if required under Federal Rule 55(b)(2).  C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion to enter a default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  That a defendant has defaulted "does not automatically entitle the plaintiff to a court-ordered judgment."  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).  Instead, the court, in its discretion, considers several factors, colloquially known as the "*Eitel* factors."  The *Eitel* factors ask courts to weigh: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III.    DISCUSSION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The Court therefore begins with an examination of its jurisdiction.

### A.    Jurisdiction

#### 1.    Subject-Matter Jurisdiction

Federal district courts generally have subject matter jurisdiction over civil cases through federal question jurisdiction, 28 U.S.C. § 1331, or diversity jurisdiction, 28 U.S.C. § 1332.  *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005).  A federal court has federal question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807 (1986).  A federal court has diversity jurisdiction if:

(1) the controversy is between "citizens of different States"; and (2) the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332; *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74 (1978).  It is Plaintiff's burden to establish subject matter jurisdiction.  *See Ass'n of Am. Med. Colls. v. U.S.*, 217 F.3d 770, 778–79 (9th Cir. 2000); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376–78 (1994).

This Court has subject matter jurisdiction over Plaintiff's claims because Plaintiff has alleged facts to demonstrate that Plaintiff and Defendants Chierchio, a.k.a. Chris Lumia, and Team Chip are all individuals or entities belonging to different States, and the amount in controversy exceeds $75,000.  (Compl. ¶ 9).

### 2.  Personal Jurisdiction

Generally speaking, "[i]t is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." *Donell v. Keppers*, 835 F. Supp. 2d 871, 876 (S.D. Cal. 2011)).  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Minimum contacts may be established via general jurisdiction or specific jurisdiction.  General jurisdiction exists where the defendant's contacts with the forum state "are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 316).  Specific jurisdiction exists when the plaintiff's claims or causes of action "arise out of or relate to" the defendant's contacts with the forum state.  *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  Because the Complaint does not allege that Defendants have any continuous or systematic presence in this forum, only specific jurisdiction is at issue here.

Where there is no federal statute controlling a court's exercise of personal jurisdiction, federal courts must look to the forum state's jurisdictional statute to determine whether it may assert personal jurisdiction. *See id.* California's long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01 (citation omitted). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Ninth Circuit has established three requirements for a district court to exercise specific personal jurisdiction over a nonresident defendant: (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (alterations in original). Plaintiff bears the burden of satisfying the first two prongs. *Id.* (citing *Schwarzenegger*, 374 F.3d at 802).

### i.  *Purposeful Availment*

To satisfy the first prong, Plaintiff must demonstrate that Defendants "purposefully availed" themselves of the privilege to conduct activities in California. *Schwarzenegger*, 374 F.3d at 802. To establish that a defendant purposefully availed himself of the privilege of conducting activities within the forum state, courts will consider the defendant's actions in the forum state, such as executing or performing a contract there, consummating a

transaction in the forum, or delivering goods to the forum. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

Here, the Plaintiff alleges that Defendants took Plaintiff's possessions to the City of Industry and Riverside, California to sell the test kits on behalf of Plaintiff. (ECF No. 47 at 10). Indeed, according to Plaintiff, Defendant represented that he was conducting his business out of the warehouse in California. (Compl. ¶ 17). Moreover, Plaintiff introduces a non-Disclosure agreement signed by Plaintiff and Defendants which contains a clause providing that the "federal or state courts located in Los Angeles, CA will have exclusive jurisdiction and venue for any action arising under this Agreement." (ECF No. 47-2 at 39). Thus, Plaintiff has adequately alleged – by showing that Defendants "delivered goods to the forum" and conducted business in the jurisdiction – that Defendants purposefully availed themselves of this forum.

### ii.    Arising Out of Forum-Related Activities

Next, Plaintiff must show that this action "arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. The Complaint alleges that this action arises out of, among other acts, the Defendants' failure to transfer the proceeds from their sale of Plaintiff's test kits within the forum state. (Compl. ¶ 18). For this reason, Plaintiff has also adequately alleged that his claims arise out of forum-related activities. *See Simple Design LTD*, 2023 U.S. Dist. LEXIS 52538, at *7–8.

### iii.    Reasonableness

"When the first two requirements are met, the burden shifts to the defendant to present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Zumba Fitness, LLC v. Brage*, No. 11-5361l, 2011 WL 4732812, at *3 (C.D. Cal. Oct. 6, 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). As previously discussed, Defendants have not appeared and so have not raised any challenge to the Court's exercise of jurisdiction over them. Further, the

record does not "suggest any compelling reason why the [C]ourt should decline to exercise jurisdiction over the [defaulting] defendant." *U.S. Futsal Fed'n v. USA Futsal LLC*, No. 17-04206, 2018 WL 2298868, at *9 (N.D. Cal. May 21, 2018) (citation omitted). Thus, the exercise of specific jurisdiction is proper.

### B. Service of Process

Before entering a default judgment, courts must also assess whether the defendant or defendants were properly served with notice of the action. *See e.g.*, *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). Federal Rule of Civil Procedure 4 governs service of the complaint and summons. Under Federal Rule of Civil Procedure 4(e)(2)(B), an individual may be served by leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. Under Federal Rule of Civil Procedure 4(h)(1)(B), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Alternatively, a corporation may be served in accordance with Rule 4(e), which allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* Fed. R. Civ. P. 4(h)(1)(A).

In this Case, the Plaintiff properly served all Defendants. Defendant Team Chip was personally served with Plaintiff's Complaint on February 6, 2023, via its registered agent for service of process. (ECF No. 11 at 1). Defendant Chris Cherchio, a.k.a Chris Lumia, was served via substitute service on March 13, 2023, by delivering true and correct copies of the Summons, Complaint, and accompanying initial documents to his wife, Lisa Chierchio, at his dwelling. (ECF No. 20 at 2).

### C. Additional Procedural Requirements

Local Rule 55-1 requires the party moving for default judgment to submit a declaration establishing: (1) when and against which party default was entered; (2)

identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the defaulting party was properly served with notice, if required under Federal Rule 55(b)(2). C.D. Cal. L.R. 55-1. Plaintiff has satisfied these requirements by attaching to the Motion the declaration of Plaintiff's counsel. (ECF No. 47-2). The declaration explains that, on April 17, 2023, default was entered against Defendant Team Chip, and on April 19, 2023, default was entered against Lumia – i.e., Chris Chierchio. (ECF No. 47-2 at 3). The declaration also explains that default was specifically entered against Defendants for not participating in the action, thus satisfying Local Rule 55-1(b). Finally, the declaration explains that Defendants are not infants, incompetent persons, or subject to the Servicemembers' Civil Relief Act, 50 U.S.C.S. App. § 521, thus satisfying Local Rules 55-1(c) and 55-1(d).[3] (*Id.* ¶ 4).

### D. *Eitel* Factors

Finally, the Court finds that, based on its analysis of the *Eitel* factors, the Motion should be granted, in part.

#### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor asks the Court to consider whether Plaintiff will be left without a remedy if default judgment is not entered. *Philip Morris USA v. Castworld Prods. Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff will be without other recourse for recovery."); *PepsiCo*, 238 F. Supp. 2d at 1177 ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Here, Defendants have failed to appear or otherwise participate in this litigation. Plaintiff will suffer prejudice if a default judgment is not entered because it will be left without a remedy. *See, e.g.*, *Daly v. ENV Night Life, LLC*, LA CV15-00509 JAK (Ex), 2015 U.S. Dist. LEXIS 190106, at *6

---

[3] Federal Rule of Civil Procedure 55(b)(2) is inapplicable because, as previously discussed, Defendant is not a minor or incompetent person. *See* Fed. R. Civ. P. 55(b).

(C.D. Cal. Dec. 17, 2015) ("As a result of the failure of Defendants to appear or participate in this litigation, Plaintiff will suffer prejudice if the default judgment is not entered. Thus, absent its entry, Plaintiff would be left without a remedy."). Thus, the first *Eitel* factor favors entry of default judgment.

### 2. Substantive Merits of Plaintiff's Claims and Sufficiency of Complaint

The second and third *Eitel* factors assess the merits of the claims of the moving party and the sufficiency of its pleadings. These two factors "require that a [movant] state a claim on which it may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (internal citation omitted). Courts regularly analyze these factors together. *See id.* In analyzing these factors, a court accepts as true all well-pleaded allegations regarding liability. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

As previously discussed, Plaintiff brings claims for (1) Fraud and Deceit, (2) Common Count – Goods and Money Had and Received, (3) Conversion, (4) Intentional Interference with Prospective Economic Advantage, (5) Breach of Oral Contract, (6) Replevin, (7) Restitution/Unjust Enrichment, (8) Accounting, and (9) Violation of Penal Code Section 49.

The Court examines each in turn.

### i. Fraud

Under California law, the elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). Here, the Complaint alleges that by making material misrepresentations and concealments of material fact to Plaintiff concerning the nature of Defendants' relationship with ICON, Defendants engaged in misrepresentation to Plaintiff. (Compl. ¶ 14). Plaintiff alleges that Defendants knew that these representations were false, and Defendants had no intention of actually performing on their arrangement with Plaintiff, thus satisfying the second and third fraud

elements.  (Compl. ¶ 25).  Plaintiff alleges that he reasonably relied on these representations – namely, that Defendants would sell his test kits on his behalf – and as a result was deprived of the benefits of the transaction.  (Compl. ¶26) (ECF No. 47 at 14).  Moreover, there is text message documentation from Chris Lumia stating in relevant part that (1) "its chris at icon" and (2) "It would be a shame for u not to take some product here/ We are taking in trucks everyday and shipping out since mondsy [sic]/ perfect time for you." (ECF No. 47-1 at 10).  Text message (1) serves as evidence of a knowing misrepresentation that Plaintiff reasonable relied upon for this business transaction.  Thus, Plaintiff has shown its fraud claim to be substantively meritorious for the purposes of granting this Motion.

### ii.  Common Count – Goods and Money Had and Received

A common count is not a specific cause of action; rather, it is a "simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory." *Avidor v. Sutter's Place, Inc.,* 212 Cal. App. 4th 1439, 1454 (2013).  Although such action is one at law, it is governed by principles of equity.  *Id.*  To prevail on a common count claim, the following elements must be met: "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." *Allen v. Powell*, 248 Cal. App. 2d 502, 510 (1967).  In particular, a claim for goods or money had and received is viable where one person has received goods or money which belongs to another, and which in equity and good conscience should be paid over to the latter.

Here, the Court finds that Plaintiff's Complaint along with the associated declarations allege facts sufficient to satisfy, for the purposes of this Motion, a common count cause of action against Defendants based on their receipt of goods and profits that rightfully belong to Plaintiff.  (Compl. ¶¶ 34, 35, 36); (Mayer Decl. ¶ 6).  Plaintiff alleges that, instead of returning the money and property that rightfully belonged to Plaintiff, Defendants misappropriated it and kept all the money and property for themselves. Because the Plaintiff has adequately alleged that the Defendants received money "intended

to be used for the benefit of [Plaintiff], that the money was not used for the [Plaintiff's] benefit, and that the defendant has not given the money to [Plaintiff]," Plaintiff has adequately shown its common count claim to be substantively meritorious for the purposes of granting this Motion. *Avidor v. Sutter's Place, Inc.,* 212 Cal. App. 4th 1439, 1454 (2013).

### iii. Conversion

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 543-544 (2003).

Here, Plaintiff's conversion cause of action is premised on Defendants' alleged converting of the test kits that Plaintiff purchased from ICON. Plaintiff alleges that Defendants took possession of the test kits and possible sale proceeds which rightfully belonged to Plaintiff and which Defendants had no right to misappropriate. (Compl. ¶ 40) ("The Lumia Defendants substantially interfered with Plaintiff's property by knowingly or intentionally taking possession of, abandoning, selling, and/or refusing to return Plaintiff's property in violation of the parties' agreement that Defendants would diligently sell such test kits on SAFE's behalf and transmit the proceeds of such sales to SAFE."). Moreover, Plaintiff alleges damages stemming from the lost profits as well as the lost value of the test kits themselves. (Compl. ¶ 43). If so, then Plaintiff adequately alleges that Defendants wrongfully exercised dominion over Plaintiff's property. Plaintiff has therefore set forth all the essential elements of a cause of action for conversion.

### iv. Intentional Interference with Prospective Economic Advantage

Intentional interference with prospective economic advantage has five elements: (1) the existence, between plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's

knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action. *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S. Inc.*, 2 Cal. 5th 505, 512 (2017).

Here, the Complaint alleges the existence of an economic relationship with a third party—namely, the transaction with ICON for the test kits—that contains the probability of future benefit. (Compl. ¶ 46). It also alleges that Defendants knew of the relationship and that Defendants intentionally aimed, through wrongful means, to disrupt the economic relationship. (Compl. ¶ 48) ("The Lumia Defendants engaged in wrongful conduct… including but not limited to: fraudulently holding themselves to be representatives of ICON during negotiations of the Purchase Order and NDA; fraudulently misrepresenting their intention to sell the test kits on SAFE's behalf and transfer proceeds of such sale to SAFE…"). Finally, the Complaint alleges that, as a direct and proximate result of the Lumia Defendants' conduct, SAFE's economic relationships with ICON and with its customers who would have purchased the test kits from SAFE were disrupted, and SAFE has been deprived of the economic benefits of such relationships. (Compl. ¶ 48). Plaintiff has therefore sufficiently alleged all the elements of a claim for intentional interference with prospective economic advantage.

### v.    Breach of Oral Contract

To show breach of an oral contract, Plaintiff must allege: (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *AToN Ctr., Inc. v. United Healthcare Ins. Co.,* 93 Cal. App. 5th 1214, 1230 (2023).

Here, Plaintiff alleges that Defendants entered into an oral contract with Plaintiff whereby Defendants agreed to take possession of and sell the test kits that Plaintiff purchased from ICON, as well as to transfer the proceeds of such sales to Plaintiff. (Compl. ¶ 52). Although Plaintiff does not introduce direct evidence regarding the content of this

oral promise, Plaintiff alleges that Plaintiff "permitted Defendants to obtain custody of the test kits it had purchased with the understanding that Defendants would sell such test kits on Safe's behalf and transmit the proceeds of such sales to Safe." (Mayer Decl. ¶ 5). Proceeds from the sale were never transmitted to Plaintiff, nor did Defendants ever reach out to Plaintiff regarding the status of Plaintiff's goods. For the purposes of this Motion, well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Thus, considering Plaintiff's Complaint and accompanying declarations, the Court finds that Plaintiff has adequately shown its oral contract claim to be substantively meritorious for the purposes of granting this Motion.

### vi.    Replevin

California law does not recognize a cause of action for replevin. Instead, "[u]nder current California law, the common law form[] of action named replevin…[is] addressed by the tort of conversion of tangible personal property." *Foster v. Sexton*, 61 Cal. App. 5th 998, 1020 (2021); *see also BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-cv-03345-WHO, 2021 WL 4061698, at *17 (N.D. Cal. Sept. 7, 2021) ("The…'writ of replevin' claim collapses into the conversion claim."), *appeal filed*, No. 21-16577 (9th Cir. Sept. 27, 2021). A prayer for relief in the form of replevin is equivalent to requesting judgement for the possession or value of personal property under California Code of Civil Procedure Section 667. Because Plaintiff has already brought a conversion claim, the alleged cause of action for replevin is redundant.

### vii.    Restitution/ Unjust Enrichment

Under California law, the elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).

Here, Plaintiff alleges that Plaintiff is the rightful owner of all such misappropriated funds and property, Defendant is in receipt of those funds and property, and "the Lumia Defendants were unjustly enriched because such wrongful acts caused them to receive benefits that they otherwise would not have achieved, to the detriment of Plaintiff." (Compl. ¶ 62). Thus, considering Plaintiff's Complaint and accompanying declarations, the Court finds that Plaintiff has adequately shown its unjust enrichment claim to be substantively meritorious for the purposes of granting this Motion.

### viii.    *Accounting*

A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting. *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation. *Id*.

However, the nature of a cause of action in accounting is unique in that it is a means of discovery. "An action for accounting is not amenable to a motion for summary judgment or summary adjudication upon a showing that plaintiff does not possess and cannot reasonably obtain the evidence needed to compel the accounting, because the very purpose of the accounting is to obtain such evidence." *Id.* at 180.

Here, since Plaintiff moves for an accounting in the context of a motion for renewed motion for default – which is a form of summary adjudication – an action for accounting is not proper.

### ix.    *Violation of Penal Code Section 496*

Plaintiff alleges that that Defendants violated California Penal Code Section 496 by using "fraud and pretense to defraud Safe of money and property that rightly belongs to it." (ECF No. 47 at 19). Section 496 "defines the criminal offense of what is commonly

referred to as receiving stolen property." *Siry Investments, L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 346 (2022). It provides in relevant part: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year…" Cal. Penal Code § 496(a). The statute provides for civil remedies to "[a]ny person who has been injured by a violation" of the statute. Cal. Penal Code § 496(c).

The Court here finds that Plaintiff has not alleged facts sufficient to trigger liability under Cal. Penal Code § 496(c). Following *Siry Investments, L.P. v. Farkhondehpour*, "not all commercial or consumer disputes alleging that a defendant obtained money or property through fraud, misrepresentation, or a breach of a contractual promise will amount to a theft. To prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond mere proof of nonperformance or actual falsity." 13 Cal. 5th 333, 361-62 (2022) (internal quotation marks omitted). Here, Plaintiff has not provided the Court with evidence sufficient to establish criminal intent. While the Plaintiff adequately alleges that Defendants "obtained money or property through fraud," this is not alone sufficient to establish the criminal intent necessary to trigger Cal. Penal Code § 496(c). Indeed, as plead, Defendant's behavior is consistent with a non-criminal design, however unlikely. Because Plaintiff has not plead facts sufficient to allege criminal intent, the Court declines to find liability under California Penal Code § 496(c) against Defendants.

### 3.   Sum of the Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. "Default judgment is disfavored where the sum of money at stake is too large or

unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (citation omitted).

Here, Plaintiff is requesting a total of $23,698,996 in compensatory damages against Defendants.   The basis of these damages is comprised of the following sums: (1) $5,926,284 for the value of the test kits that were allegedly stolen or converted from Plaintiff to Defendants; (2) $1,418,256 in lost profits that Plaintiff expected to receive from the resale of Plaintiff's test kits; and (3) $38,325 in labor costs incurred by Plaintiff and his personnel in attempting to reclaim possession of the test kits. (ECF No. 47 at 21).  Plaintiff argues further that he is entitled to treble damages, attorney's fees, pre-judgment interest, and costs on top of the above compensatory damages.

As discussed in more detail below, the Court declines Plaintiff's request for treble damages and attorneys' fees since the Court does not find liability under California Penal Code § 496(c) against Defendants.  Taking treble damages and attorneys' fees off the table, the Court here finds that the request for the value of the test kits, lost profits, and pre-judgment interest are reasonable and justified given (1) the amount Plaintiff paid for the test kits, (2) the anticipated profits from the test kits, and (3) the time and effort spent trying to recoup these losses by Plaintiff.  Accordingly, the judgment requested by Safe – minus the treble damages and attorneys' fees – is reasonably proportional to the harm that Defendants have caused.  The Court discusses these damages in more detail below.

### 4.    Possibility of a Dispute Concerning Material Facts

"The fifth *Eitel* factor examines the likelihood of disputes between the parties regarding the material facts surrounding the case." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010).  "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (citing *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921-22 (C.D. Cal. 2010)).  As discussed above, Plaintiff's complaint was well plead and thus a dispute concerning material facts is

unlikely.  This factor weighs in favor of default judgment.  *See Simple Design*, 2023 U.S. Dist. LEXIS 52538, at *13.

### 5. Possibility of Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo*, 238 F. Supp. 2d at 1177.  This factor favors a default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit.

As discussed above, since Plaintiff has submitted proofs of service, this factor weighs in favor of default judgment.

### 6. Policy Favoring Decisions on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering a default judgment." *Craiglist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Although "[c]ases should be decided on their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, "[u]nder Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *PepsiCo*, 238 F. Supp. 2d at 1177.  Notwithstanding the strong policy presumption in favor of a decision on the merits, where a defendant's failure to appear and respond "makes a decision on the merits impractical, if not impossible," default judgment is appropriate. *Id.*  Here, Defendant has failed to appear and respond.  Thus, this factor therefore favors entry of default judgment.  Therefore, all *Eitel* factors favor entry of default judgment.

### E. Damages

After the Clerk enters default, well-pleaded allegations in the complaint are generally accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  Allegations as to damages, however, must be proven. *Id.*  To determine damages, a court may rely on the declarations submitted by the plaintiff or order a full evidentiary hearing.  Fed. R. Civ. P. 55(b)(2).  Additionally, "[a] default judgment must

not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

As stated above, Plaintiff is requesting a total of $23,698,996 in compensatory damages against Defendants.  The basis of these damages is comprised of the following sums: $5,926,284 for the value of the test kits that were allegedly stolen or converted from Plaintiff to Defendants and $1,418,256 in lost profits that Plaintiff expected to receive from the resale of Plaintiff's test kits (ECF No. 47 at 21).  Plaintiff argues further that he is entitled to treble damages, attorney's fees, costs, and pre-judgment interest in addition to the above compensatory damages.  As stated above, the Court declines Plaintiff's request for treble damages since the Court does not find liability under California Penal Code § 496(c) against Defendants.

Save the treble damages, the Court takes each of these categories in turn.

### 1.    Compensatory Damages

Plaintiff requests a total of $7,382,865 in real compensatory damages.  Based on the declarations provided, Plaintiff's request for $5,926,284 for the value of the test kits is acceptable and does not exceed the amount requested in the pleadings.

Plaintiff also requests $1,418,256 for the lost profits that Plaintiff expected to receive from the resale of Plaintiff's test kits.  According to the Declaration of Ken Mayer, "Safe's intention in purchasing the test kits was to resell those test kits to other downstream purchasers.  Based on an analysis performed by Safe of the projected profits it expected to receive from the sales of those test kits pursuant to the market conditions for such test kits at the time and Safe's existing business relationships, Safe estimates that it would have been able to sell each of the 1,013,040 test kits for approximately $7.25, making a total retail value of $7,344,540.  Taking into consideration the $5,926,284 that Safe purchased the test kits for, this means that Safe was expecting a profit on the test kits of at least" $1,418, 256.  (ECF No. 47-1 at 3).  The Court finds this amount acceptable and does not exceed the amount requested in the pleadings.

    2.  <u>Attorneys' Fees and Costs</u>

  The general rule in our legal system is that each party must pay its own attorneys' fees. *Vogel v. Harbor Plaza Ctr.*, LLC, 893 F.3d 1152, 1159 (9th Cir. 2018). Plaintiff argues, however, that its Ninth Cause of Action for Violation of California Penal Code Section 496 entitles recovery of attorneys' fees and costs in this litigation. But, as was explained above, the Court does not find liability under California Penal Code § 496(c) against Defendants. Therefore, following the general rule on attorneys' fees, Plaintiff is responsible for its own fees and costs.

    3.  <u>Punitive Damages</u>

  Punitive damages are disfavored in California. *Woolstrum v. Mailloux*, 141 Cal. App. 3d Supp. 1, 9, 190 Cal. Rptr. 729 (1983) ("The law does not favor the imposition of punitive damages. They should only be allowed in the 'clearest of cases.'"). California Civil Code section 3294(c) authorizes punitive or exemplary damages only in cases where clear and convincing evidence shows that the defendant acted with "oppression, fraud or malice." Punitive damages are not available for breach of contract, but may be available for breach of the covenant of good faith and fair dealing, which is essentially a tort claim, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." *Bouncing Angels, Inc. v. Burlington Ins. Co.*, No. EDCV170015JGBSPX, 2017 WL 1294004, at *3 (C.D. Cal. Mar. 20, 2017)

  Under California Civil Code § 3294(a), Plaintiff requests $5,926,284 in punitive damages against Defendants based on their conduct, which according to Plaintiff "clearly constitutes oppression, fraud, and malice." (ECF No. 47 at 23). Since liability on Plaintiff's fraud claim has been established, Plaintiff can rightly request imposition of punitive damages. Noting that the key question for punitive damages is whether the amount of punitive damages exceeds the level necessary to punish and deter, this Court finds that $5,926,284 in punitive damages is justified for the following reason. *See Cummings Med. Corp. v. Occupational Med. Corp.*, 10 Cal. App. 4th 1291, 1299 (1992). Plaintiff purchased the test kits for $5,926,284 shortly before Defendants obtained them.

In assessing whether a punitive damage fine would function to deter future wrongful action, it can be assumed that a penalty for the value of the goods fraudulently held is adequate to deter since the wrongdoer must, as it were, pay for the goods himself, without the benefit of getting to own the goods. For instance, if one is caught defacing goods in a market, one may be forced to purchase those defaced goods, even if one is never able to enjoy the benefits of ownership. Considering this, the Court awards $5,926,284 in punitive damages to Plaintiff.

4.    <u>Prejudgment Interest</u>

Plaintiff additionally seeks, pursuant to California Civil Code Section 3287, prejudgment interest at a rate of 7% per annum. Cal. Civ. Code § 3287.

"The test for recovery of prejudgment interest under section 3287, subdivision (a) is whether defendant (1) actually knows the amount of damages owed plaintiff, or (2) could have computed that amount from reasonably available information." *KGM Harvesting Co. v. Fresh Network*, 36 Cal. App. 4th 376, 391 (1995). "The availability of prejudgment interest under section 3287(a) is primarily a question of law." *Brocklesby v. United States*, 767 F.2d 1288, 1298 (9th Cir. 1985). "[W]hen sections 3287 and 3288 were adopted in 1872, the key distinguishing factor was not ... whether the cause of action arose in tort or contract, but rather whether the damages were readily ascertainable*." Levy-Zentner Co. v. S. Pac. Transportation Co.*, 74 Cal. App. 3d 762, 795 (1977). "[P]rejudgment interest must be granted as a matter of right if, as a matter of law, damages are 'certain, or capable of being made certain by calculation.'" *Id*. at 798 (quoting Cal. Civil Code § 3287(a).).

Here, the Court finds that, given the reasonable available information provided, the amount of damages owed to plaintiff are "readily ascertainable." Because of this, Plaintiff is entitled to prejudgment interest at a rate of 7% per annum in accordance with California Civil Code § 3287.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion is GRANTED, IN PART.  The Court hereby ORDERS that Plaintiff shall have and recover judgment against Defendants as follows:

| | | |
|---|---|---|
| 1. | Value of Property Converted: | $5,926,284 |
| 2. | Lost Profits: | $1,418,256 |
| 3. | Prejudgment Interest (7%) | $928,975.68 |
| 4. | Punitive Damages | $5,926,284 |

**IT IS SO ORDERED.**

Dated: January 9, 2024

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE